**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION**

SMART PHARMACY, INC.

and

SP2, LLC,

          Plaintiffs,

     v.

EXPRESS SCRIPTS, INC.

and

LT. GENERAL RONALD J. PLACE,
DIRECTOR DEFENSE HEALTH AGENCY
7700 ARLINGTON BLVD., SUITE 5101
FALLS CHURCH, VA 22042-5101,

          Defendants.

Case No.

Honorable

**JURY TRIAL DEMANDED**

_____

**COMPLAINT WITH JURY DEMAND**

NOW COME Plaintiffs, Smart Pharmacy, Inc. ("Smart") and SP2, LLC ("SP2") (collectively "Plaintiffs"), by and through counsel, and for their Complaint seeking damages against Express Scripts, Inc. ("ESI") and declaratory judgment and relief against Defendant Lt. General Ronald J. Place, Director, Defense Health Agency ("DHA") state and aver as follows:

1.      Smart is a Florida corporation with its principal place of business in Jacksonville, Florida that has been operational for over a decade, since 2006 and is

assigned FEI/EIN Number 71-1012955.   While under common ownership with SP2, Smart is not the same entity as SP2.

2.      SP2 is a Florida limited liability company with its principal place of business in Jacksonville, Florida that has been doing business since 2012 and is assigned FEI/EIN Number 45-4638614.  While under common ownership with Smart, SP2 is not the same entity as Smart.

3.      DHA, run by Director Lt. General Ronald J. Place ("Place") is a joint, integrated Combat Support Agency that enables the Army, Navy and Air Force to provide medical services in both peacetime and wartime.  The DHA supports the delivery of integrated, affordable, high-quality health services to Military Health System ("MHS") beneficiaries and is responsible for driving greater integration of clinical and business processes across the MHS.  It also manages TRICARE.  Pursuant to the authority delegated to it by Congress, the Department of Defense ("DoD") established the Civilian Health and Medical Program of the Uniformed Services ("CHAMPUS") in 1967. CHAMPUS beneficiaries include retired armed forces personnel and dependents of both active and retired military personnel.  In 1995, the DoD established TRICARE, a managed health care program to administer health benefits to CHAMPUS beneficiaries. The TRICARE Management Activity, which was previously known as Office of CHAMPUS, was the government office charged with the responsibility of administering TRICARE until October 1, 2013, when DHA took over responsibility for managing TRICARE.  Accordingly, DHA must, as a matter of law (1) adjudicate all claims to completion and release the corresponding funds as promised on June 30, 2017; (2)

2

provide all documentation that is required under federal law to temporarily suspend claims processing; (3) afford proper due process for the suspension of claims; and (4) release all funds under temporary suspension currently in place by the DHA.

4.      As health care providers, Smart and SP2 have had relationships with multiple private and public health care programs, including, but not limited to TRICARE. Smart filled prescriptions for and provided medications to beneficiaries of CHAMPUS/TRICARE and beneficiaries of other third-party insurance plans.

## JURISDICTION AND VENUE

5.      This is an action for breach of contract, negligence, negligent misrepresentation, breach of good faith and fair dealing, unjust enrichment, conversion and declaratory judgment against Defendant ESI and declaratory judgment against Defendant DHA.

6.      It is also an action for declaratory judgment under the Federal Declaratory Judgment Act, 28 U.S.C. §§2201 and 2202.

7.      This Court has jurisdiction under 28 U.S.C §1331.

8.      Venue is appropriate under 28 U.S.C. §1391 and 28 U.S. C. §1332.

## FACTUAL ALLEGATIONS

### Plaintiff's Business

9.      Smart (NCPDP # 1025192) and SP2 (NCPDP #57319396) are retail and compounding pharmacies in Jacksonville, Florida that, during all times pertinent in the Complaint, provided customized alternatives to help meet the needs of patients by working with medical providers to provide high quality integrated care.

3

10.     Compounding is the process by which a pharmacist combines, mixes or alters ingredients prescribed by a physician to create a medication clinically specified to meet the individual and distinct needs of each patients.  Compounding is typically used to prepare medications that are not commercially available to target individual patient conditions such as dosage limitations, intolerance to ingredients in mass-manufactured medicines, to create a discontinued medication that has been effective for a patient, or for a variety of other personalized reasons.

11.     Compounding is fundamental to the pharmaceutical profession, and before manufacturers produced drugs in mass quantities, it was the original way that medicines were made, and the standard means of providing prescription medications.

12.     Most patients pay for prescriptions with insurance or government-sponsored prescription drug benefits.  As a result, Smart and SP2's primary source of revenue was income earned from filling prescriptions for privately and publicly insured patients.

**The Pharmacy Submission and Payment Process for TRICARE Beneficiaries**

13.     To fill prescriptions for government (or privately insured) beneficiaries and to receive payment in exchange for doing so, Smart or SP2 must enter into contracts that establish the terms and conditions under which those prescriptions may be filled. Among other things, these contracts, in addition to setting forth terms unilaterally established by third party payers, specify the rates at which Smart or SP2 will be reimbursed for dispensing prescribed medications to patients and set out the procedures Smart and/or SP2 must follow to confirm coverage and obtain reimbursement.

4

14.     Rather than enter into thousands or tens of thousands of separate contracts with individual pharmacies throughout the country, TRICARE contracted with a Pharmacy Benefits Manager ("PBM"), ESI, who in turn contracted with individual pharmacies including Smart and SP2 to fill prescriptions for the beneficiaries of the insurers, including TRICARE beneficiaries.

15.     Providers of health care items and services to CHAMPUS/TRICARE beneficiaries such as Smart and SP2, submit to TRICARE – or to a third-party administrative contractor acting on the DHA's behalf, here ESI – claims for payment for the items and services they provide.  Such claims are then processed and paid under DHA's direction and authority.

16.     Smart and SP2 do not have a direct contract with TRICARE.

**Medco Settlement**

17.     The Federal Claims Collection Act requires ESI (previously Medco Health Solutions, Inc.) acting on behalf of TRICARE, regardless of fault, to try to recoup any overpayments made to members or providers.

18.     As part of Medco Health Solutions, Inc. n/k/a ESI's collection activities, a lawsuit ensued whereby ESI sought recoupment for alleged overpayment to several TRICARE provider pharmacies.

19.     On February 23, 2015 a Settlement Agreement ("Medco/ESI Settlement Agreement") was entered between Smart Pharmacy, Inc. (as well as other non-party pharmacies) and Medco Health Solutions, Inc. and Express Scripts, Inc. settling actions relative to a class action in *Smart Pharmacy, Inc., et al. v. Medco Health Solutions, Inc.*,

Case No. 2:11-CV-6485 (D.C. NJ).  A true and accurate copy of the February 23, 2015 a Settlement Agreement attached as Exhibit "35".[1]

20.     When ESI acquired Medco in 2012, it expressly bound itself to the Medco/ESI Settlement Agreement.

21.     The Medco/ESI Settlement Agreement states "…This Release discharges the Disputed Claims and any and all claims, including those of which Medco/ESI are not aware, and those not mentioned in this Release. This Release includes, but is not limed to, every claim, right and cause of action which Medco/ESI have or may have had against Plaintiffs including, but not limited to, those of which the Medco/ESI may not be aware and those not expressly mentioned in this Agreement, from the beginning of time to the date of this Agreement including, but not limited to any and all claims arising out of the subject Litigation as defined above."  Ex. 35.

22.     The February 2015 Medco/ESI Settlement Agreement expressly released any and all claims for overpayment that occurred prior to February 23, 2015.

**ESI**

23.     ESI is a PBM which administers nearly every prescription drug insurance plan in the U.S.  PBMs were created by managed care organizations in the 1980's to apply managed care principles, such as provider networks and patient co-pays, to the drug benefit portion of health care plans.

---

[1] The Settlement Agreement contains confidentiality provisions that prohibit Plaintiffs from attaching it to the instant Complaint, but leave is being sought from other parties for disclosure under seal.

24.     ESI is the PBM that is contracted with the DoD to administer the TRICARE program which is the program that furnishes health care services to military members and their families.

25.     DHA has oversight and management authority to direct DoD's operations of the TRICARE program.

26.     To service the DHA TRICARE beneficiaries, ESI contracted with Smart and SP2 to provide pharmaceuticals for TRICARE members pursuant to ESI's contracts with the DoD.

27.     The Provider Agreements[2] between Smart and ESI and separately between SP2 and ESI are valid, binding and enforceable contracts.

28.     Pursuant to the Written Agreements, Smart and SP2 were required to follow ESI's policies and procedures governing the relationship with ESI which are set forth in ESI's Network Provider Manual ("Provider Manual").[3]

29.     Conversely, ESI was obligated to remit payment to Smart and SP2 with respect to claims submitted pursuant to the Written Agreements and in accordance with ESI's policies and procedures set forth in the Provider Manual.

30.     Smart and SP2, following the guidelines of DHA and ESI, submitted documentation for payment to DHA's PBM ESI and were paid for the provision of

---

[2] The Provider Agreements contain confidentiality provisions that prohibit Plaintiffs from attaching them to the instant Complaint, but the same are being filed under seal in connection with Plaintiffs' motion for leave to file exhibits under seal.

[3] The Provider Manual contains confidentiality provisions that prohibit Plaintiffs from attaching it to the instant Complaint, but the 2016 version is being filed under seal in connection with Plaintiffs' motion for leave to file exhibits under seal.

pharmaceutical goods and services that were provided to DHA TRICARE beneficiaries by ESI with funds ESI obtained from DHA.

31.     ESI contracts with TRICARE and acts as TRICARE's agent in evaluating claims for coverage determinations, determining the amount of coverage, auditing claims, and securing pharmacies to service TRICARE beneficiaries.

### Temporary Claims Payment Suspensions and DHA and ESI's Ongoing Non-Payment

32.     Without warning, on or about December 30, 2015, DHA issued notice to Smart and SP2  that they were temporarily suspended from processing claims and receiving payments from DHA, through its agent, ESI, based on a Civil Investigative Demand ("CID") "for claims and billing information for prescription drugs billed to government health care programs" hereinafter referred to as "First Temporary Suspension."  A true and accurate copy of this notice is attached hereto as Exhibit "3."

33.     Despite initiating a temporary claims processing suspension, DHA mandated that the participation agreement with the patients remained in "full force and effect" and that the pharmacy was expressly prohibited from repudiation of any agreement "as a result of delay in final disposition of claims."  Ex. 3.

34.     In response to the December 30, 2015 notice from DHA, ESI did not process any claims or issue any payments for services and products provided to TRICARE beneficiaries.

35.     Interestingly, the CID referenced that the First Temporary Suspension was nothing more than a subpoena for records that announced its purpose as looking for records that might establish false claims.

36.     DHA and ESI relied upon improperly received, unsubstantiated, and inaccurate information in issuing the First Temporary Suspension and withholding payments.

37.     The maximum length of a TRICARE claims processing suspension is eighteen (18) months.  *See* 32 CFR § 199.9(h)(1)(vi)(A).

38.     There has never been a determination that Smart or SP2 filed any false claims.

39.     The First Temporary Suspension to Smart and SP2 noted that "any participation agreement with your patients remains in full force and effect; you cannot repudiate an agreement as a result of the delay in final disposition of claims."  Ex. 3.

40.     The First Temporary Suspension to Smart and SP2 required both to continue to fulfill TRICARE prescriptions, but expressly prohibited reimbursement to Smart and SP2 from ESI for the pharmaceutical goods and services provided to TRICARE members, thereby mandating SP2 to service the TRICARE beneficiaries at SP2's cost with no known date of reimbursement.  Ex. 3.

41.     On April 14, 2016, DHA restated, without additional evidence DHA stated there was "a pattern of billing problems over several years and that medical necessity concerns exist regarding compound prescriptions being filled by Smart."  Presumably, in response, ESI continued to withhold payments due and owing Smart and SP2.  A true and accurate copy of the April 14, 2016 correspondence is attached hereto as Exhibit "4."

42.     At all times material, Plaintiffs were neither responsible for nor charged with determining medical necessity for any patients who received compounded

medications that were covered by Medicare and TRICARE.  To the contrary, under Florida law determination of medical necessity is relegated to prescribing physicians, not pharmacies.

43.     Only prescribers determine medical necessity and Smart and SP2, as non-prescribers, did not have access to medical service records supporting the prescriptions that are the subject of the "medical necessity" challenges being levied by DHA and ESI regarding compound prescriptions being filled by Smart."

44.     In fact, it was impossible for Smart or SP2 – or any pharmacy – to determine coverage or medical necessity because pharmacies not only lack the prescriber's examination and medical records, but also the business directives of Medicare, TRICARE, insurance plans, pharmacy benefits plans and Plan Sponsors.

45.     DHA's temporary suspension authority limits such suspension to twelve (12) months, with the ability to seek an additional six (6) months if the Government official responsible for initiating a legal or administrative action officially requests such an extension.  32 C.F.R. §199.9(h)(1)(vi)(A).

46.     The regulations make clear that a temporary suspension may not extend beyond eighteen (18) months, unless legal or administrative proceedings have been initiated during that period:

> …if legal or administrative proceedings are not initiated within 12 months after the date of the suspension notice, the suspension shall be terminated unless the Government official responsible for initiation of the legal or administrative action requests its extension, in which case it may be extended for an additional 6 months.  In no event may a suspension extend beyond 18 months, unless legal or administrative proceedings have been initiated during that period. *Id.*

47.     No documentation was ever provided to SP2 indicating that the Government official responsible for initiating DHA legal or administrative action requested an additional six (6) month extension required by 32 C.F.R. §199.9(h)(1)(vi)(A).

48.     Absent documentation to support a six (6) month extension, the temporary suspension became unlawful on December 30, 2016.

49.     ESI is aware of the law and has, despite the legal expiration of the First Temporary Suspension refused to pay Smart and SP2 for services or products provided to TRICARE beneficiaries.

50.     On June 30, 2017, eighteen (18) months after initiation of the temporary suspension by the DHA, DHA advised that it would "lift the suspension of payment for present and future claims for services provided by you or your organization effective immediately.  Our pharmacy benefits manager, Express Scripts, Inc., will adjudicate all claims to completion that have been held since the temporary claims payment suspension was initiated.  All adjudicated claims payable in accordance with TRICARE Regulations will be released for payment.  Any claims which cannot be paid will be processed in accordance with TRICARE Regulations and appropriate notice provided."  A true and accurate copy of the June 30, 2017 correspondence is attached hereto as Exhibit "5."

51.     ESI then began the adjudication process and paid Smart and SP2 for some claims.

52.     Despite the lifted suspension and express representation that all adjudicated claims would be released for payment, all claims were never adjudicated or

paid by ESI, and DHA failed to enforce the processing of claims of Smart or SP2 claims by ESI on behalf of DHA for services rendered.

53. On July 13, 2017, DHA again suspended payment for present and future claims for services to Smart and SP2 (and the owners/officers of Smart and SP2 – Gregory Balotin and William Scrogins), the "Second Temporary Suspension."  True and accurate copies of the Second Temporary Suspension correspondence are attached hereto as Exhibit "6."

54. The Second Temporary Suspension included all claims prior to July 13, 2017, including those previously attached in the First Temporary Suspension.

55. Contemporaneously, ESI also stopped adjudication of Smart and SP2 claims on or about July 13, 2017.

56. Additionally, identical to the First Suspensions, DHA mandated that the participation agreement with the patients remained in "full force and effect" and that the pharmacy was expressly prohibited from repudiation of any agreement "as a result of delay in final disposition of claims."  Ex. 6.

57. On February 4, 2019, DHA lifted the Second Temporary Claims Suspension presumably in response to the January 18, 2019 letter by Plaintiffs demanding the release of the claims payment processing suspension and payment for all outstanding claims.  A true and accurate copy of this February 4, 2019 correspondence is attached hereto as Exhibit "7" and the January 18, 2019 correspondence is attached hereto as Exhibit "8."

58.     Since December 2015, SP2 and Smart made repeated efforts to satisfy or resolve any purported concerns that DHA may have with any claims submitted by Smart or SP2 for processing and payment and demanded that the claims be adjudicated.

59.     Similarly, SP2 and Smart have made repeated demands on ESI for payment of the claims.

60.     ESI, despite being under contract with Smart and SP2 to provide payments for services and products rendered to TRICARE beneficiaries, has failed to tender payment to Smart or SP2.

61.     Despite these repeated demands, DHA refused to process and pay the claims or order ESI to adjudicate the claims and ESI had refused to adjudicate the claims and tender payment to Smart and SP2.

### ESI Recoupment Inconsistencies and Inaccuracies
### Related to the First, Second, and Third Payment Suspensions

62.     Several contradictory recoupment letters were allegedly sent to Smart and SP2 in 2018-2019.  True and accurate copies of theses exhibits are attached hereto as Exhibits "9" – "21."

63.      The letters do not meet the requirements of 32 CFR 199.11, including 32 CFR 199.11(f)(6)(ii) and 32 CFR 199.11(f)(6)(iii).

64.     On April 19, 2018, Smart and SP2 (as well as non-parties William Scrogins and Gregory Balotin) initiated suit against the DHA (and non-party Department of Health and Human Services) in *Smart Pharmacy, Inc. et al. v. Bono, et al.*, Case No. 3:18-cv-525-BJD-JBT in the Middle District of Florida for Declaratory Judgment

regarding the claims that were subject to the temporary claims payment processing suspensions and DHA attempts to collect alleged overpayments through ESI.

65.     This case was dismissed, without prejudice on the docket, and DHA, on the one hand and Smart and SP2 on the other settled all claims between which resulted in DHA ordering ESI to clarify the multiple and convoluted recoupment notices (where perfection of service remained an issue) through reissuance of a final reconciliation regarding monies allegedly due and owing for all past and current audit findings by ESI on behalf of DHA.  Further, DHA agreed to order ESI to provide Smart and SP2 with proper service of the findings and expressly permit Smart and SP2 all appeal rights. A true and accurate copy of the correspondence memorializing this agreement is attached hereto as Exhibit "34."

66.     As a result, on October 23, 2019, ESI on behalf of DHA issued notice to Smart and SP2 indicated that it had already withheld $4,149,477.97 in reimbursements and that despite prior demands for recoupment, including an admission by ESI that the original amount to be collected was to be $8,760,754.75 (this amount is unclear from the prior correspondence outlined at Exs. 9-21), the principal balance due to ESI and DHA (TRICARE) was $0.  A true and accurate copy of this correspondence is attached hereto as Exhibit "22."[4]

67.     In addition to lowering the amount of recoupment demanded and offsetting the dollars against unreconciled claims that were improperly attached, retained and held throughout the temporary claims payment processing suspensions, ESI indicated

---

[4] Enclosures to Exhibit 22 were not attached due to volume but are and will be made available.

that TRICARE determined the amount of the debt (and accompanying calculations) and expressly authorized Smart and SP2 the opportunity to request and administrative review. Ex. 22.

68.     In response to the October 23, 2019 correspondence, Plaintiffs, on November 15, 2019, advised ESI of the gross miscalculation represented in the October 23, 2019 correspondence.  A true and accurate copy of this correspondence (without patient record documents included with the original correspondence) is attached hereto as Exhibit "23."

69.     Eight days later, on October 31, 2019, DHA placed Smart and SP2 on another temporary claims payment processing suspension ("Third Temporary Suspension") and through separate correspondence proposed that Smart and SP2 be excluded as DHA TRICARE providers.   True and accurate copies of these communications are attached hereto as Exhibits "24" and "25."

70.     The Third Temporary Suspension included all claims prior to October 31, 2019 including those previously attached in the First and Second Temporary Suspensions. Ex. 24.

71.     Yet again, DHA mandated that the participation agreement with the patients remained in "full force and effect" and that the pharmacy was expressly prohibited from repudiation of any agreement "as a result of delay in final disposition of claims."  Ex. 24.

72.     Additionally, one day prior to placing ESI on notice of the miscalculations, on November 14, 2019, Smart and SP2 provided a detailed itemization

of DHA and ESI's errors and provided supporting documentation.  A true and accurate copy of the correspondence (without patient record documents included with the original correspondence) is attached hereto as Exhibit "26."[5]

73.     Then, on November 26, 2019 again, in response to an October 31, 2019 Notice from DHA, Plaintiffs placed DHA on notice of the improper funds being withheld by ESI and expressly demanded DHA to instruct ESI to pay the monies due and owing to Smart and SP2.  A true and accurate copy of the November 26, 2019 correspondence is attached hereto as Exhibit "27."[6]

74.     Separately, and in compliance with ESI directives, as the agent of DHA, Plaintiffs' appealed the debt calculation findings on January 21, 2020 and supplemented on January 31, 2020.  True and accurate copies of these correspondence are attached hereto as Exhibits "28" and "29".[7]

75.     In reality, as noted, the amount due and owing from ESI for TRICARE beneficiaries to Smart is $3,039,172.  Exs. 28-29.

76.     In reality, as noted, the amount due and owing from ESI for TRICARE beneficiaries to SP2 is $4,251,834.  Exs. 28-29.

77.     Thus, ESI owes Plaintiffs a total of at least $7,291,006 for pharmaceutical services and products provided to DHA TRICARE beneficiaries after a complete

---

[5] Enclosures to Exhibit 26 were not attached to the exhibit due to volume but are and will be made available.
[6] Enclosures to Exhibit 27 were not attached to the exhibit due to volume but are and will be made available.
[7] Enclosures to Exhibits 28 and 29 were not attached to the exhibit due to volume but are and will be made available.

reconciliation of the First Temporary Suspension, Second Temporary Suspension, and Third Temporary Suspension.  Exs. 28-29.

78.     On March 12, 2020, an administrative hearing was held in Aurora, Colorado and on July 1, 2020, DHA issued a finding recommending exclusion of Smart and SP2 (as well as non-parties Scrogins and Balotin) and reaffirmed the improper calculations and recoupments asserted by ESI in the October 23, 2019 correspondence. A true and accurate copy of the July 1, 2020 correspondence is attached hereto as Exhibit "30."

79.     On August 28, 2020, the Appeal and Request for Hearing was served on the DHA as well as the Office of Appeals, Hearings, and Claim Collection Defense Health Agency.  A true and accurate copy of the correspondence (without enclosures or exhibits) is attached hereto as Exhibit "31."[8]

80.     Further, Plaintiffs continued to demand payment of $7,291,006 from DHA's agent, ESI, and DHA to no avail.  See additional correspondence of September 3, 2020 (to ESI and DHA) and December 1, 2020 (to ESI), attached here to as Exhibits "32" and "33."

81.     When DHA directed ESI to collect the alleged overpayments from Smart, ESI pursued collection of the funds and *finally* determined, after numerous inconsistent notices, that Plaintiffs owed DHA $4,149,477.97 – the exact amount ESI had already recouped on behalf of DHA.  Ex. 22.

---

[8] Enclosures to Exhibit 31was not attached due to volume but are and will be made available.

82.     ESI offset the $4,149,477.97 and notified Smart and SP2 that no monies were owed to ESI or DHA, but that ESI, on behalf of DHA was retaining the already recouped monies, which were challenged, totaling $4,149,477.97.  Ex. 22.

83.     DHA and ESI have refused to properly account for the alleged overpayments or return monies improperly recaptured to Plaintiffs; to wit, $7,291,006.

84.     The data attached to the recoupment letters is significantly flawed and does not support any claim or recoupment for overpayment.

85.     ESI and TRICARE only targeted recoupment of compound prescription claims even though many ESI and TRICARE patient beneficiaries were contemporaneously dispensed other prescriptions which were prescribed for the beneficiary at the same time by the same prescriber.

86.     TRICARE did not seek recoupment from ESI even though TRICARE alleges subject claims were not administered correctly and therefore, upon information and belief, reversed by ESI.

87.     Recoupment was untimely given it was applied 3-8 years after the dates of service in violation of the ESI Provider Manual and TRICARE Reimbursement Manual.

88.     Subject to the provisions of 28 U.S.C. §2416, and except as otherwise provided by Congress, every action for money damages brought by the United States or an officer or agency thereof which is founded upon any contract express or implied in law or fact, shall be barred unless the complaint is filed within six years after the right of action accrues or within one year after final decisions have been rendered in applicable administrative proceedings required by contract or by law, whichever is later.

18

## The Invalidity of the Entire Recoupment

89.    As noted, DHA and ESI promoted the position that Smart and SP2 owed no monies as the ESI had recouped $4,149,477.97 on behalf of DHA. Ex. 22

90.    As support for the flawed mathematical calculations promoted by ESI and DHA, ESI attached hundreds of pages of claims showing reversals and payments conducted in October 2019.  Ex.22.

91.    The claims subject to reversals and payments span 2012 to 2019.  Ex.

92.    Absent from the recoupment itemization is any basis for the reversal of payment other than "Audit Claim Review."  Ex. 22

93.    These ambiguous reversals do not provide the proper bases for recoupment and do not comply with regulations or law.

94.    Further, some of the payments paid on the detail of overpayment summary note that claims were paid during one of the periods of reinstatement in between the serial claims payment processing suspensions levied by DHA.

95.    The claims identified in the detail of overpayment summary are barred by the Medco/ESI settlement of 2015 and the releases of the temporary claims payment processing suspension.

## Ongoing Recoupment Violations

96.    The relationship between ESI and Smart as well as ESI and SP2 expressly outlines a process for disputed claims that includes ESI's provision, on behalf of DHA, to Smart and SP2 a detailed basis of the claim inaccuracies that lead to recoupment and

allotment of a mandatory appeal process of ESI and DHA's findings by Smart and/or SP2.

97.     TRICARE claims are subject to the rules and regulations of the TRICARE Reimbursement Manual 6010.61-M, 32 C.F.R. §199.2, and 32 C.F.R. §199.17, among others.

98.     ESI and DHA failed to follow the required processes of notification to Providers Smart and SP2, mandatory rules and regulations related to payment, reimbursements, and recoupments, and have failed to honor Smart and SP2's appellate rights.

99.     Smart and SP2 followed all processes outlined by ESI and DHA.

100.     Separately, Smart and SP2 properly appealed the DHA improper calculations directly to DHA and separately to ESI.

101.     DHA's direction to ESI to collect and retain alleged overpayments and ongoing refusal to direct ESI to provide payments for pharmaceutical products and services rendered by Providers Smart and SP2 is in violation of the administrative processes, rules, and regulations that protect Smart and SP2 from the very oppression being imposed by DHA and ESI. ESI's actual collection, on behalf of DHA, of alleged overpayments is in violation of the agreement between ESI and Smart/SP2 and has caused damages of at least $7,291,006.

102.     CMS provides guidance and regulations for the payments to providers for services as well as the reporting and returning of overpayments associated with Medicare

Part D prescriptions, which, upon information and belief, were not followed by Plan Sponsors.

103.    CMS also provides coverage guidance and regulations for multi-ingredient compounds relative to Medicare Part D which, upon information and belief, were not followed by Plan Sponsors.

**ESI's May 2019 Audit of Smart and SP2**

104.    In May 2019, ESI initiated another audit against Smart and SP2 ("May Audit").

105.    To date, ESI has not provided any findings from these audits to either Smart or SP2.

106.    However, in the DHA correspondence dated July 1, 2020, DHA advised that ESI had provided audit conclusions from the May Audit.

107.    ESI advised DHA that it has reviewed sixty (60) prescriptions filled by Smart between March 19, 2019 and May 1, 2019 and thirteen (13) prescriptions filled by SP2 between March 8, 2019 and April 24, 2019.  Ex. 29.

108.    ESI conclusions, despite never being shared with Smart or SP2 as required by the Written Agreements and Provider Manual, were then relied upon by DHA.  Ex. 29.

109.    The audit conclusions shared with DHA on July 30, 2019 that, to this date remain a mystery to Smart and DHA, are not final, have never been served, and have not been appealed; all of which is expressly prohibited under the Written Agreements and Provider Manual.

**The Settlement Agreement between DHA and Smart and SP2**

110.    On or about April 20, 2018 a lawsuit commenced between Smart and SP2 on one side and DHA on the other captioned *Smart Pharmacy, Inc. et al. v. Bono, et al.,* Case No. 3:18-cv-525-BJD-JBT in the Middle District of Florida which ultimately settled on or about September 13, 2019.

111.    Pursuant to the terms of the settlement ("Settlement Agreement"), DHA was to order ESI to clarify the multiple and convoluted recoupment notices through reissuance of a final reconciliation regarding monies allegedly due and owing to Smart and SP2 for all past and current audit findings by ESI on behalf of DHA.  Ex. 34.

112.    Additionally, as part of the Settlement Agreement, DHA agreed to order ESI to provide Smart and SP2 with proper service of the findings and reconciliations and expressly permit Smart and SP2 all appeal rights.

113.    In compliance with the Settlement Agreement, DHA ordered ESI on October 23, 2019, to notice Smart and SP2 with final findings regarding the monies due and owing from ESI on behalf of DHA.

114.    The ESI notice on behalf of DHA claimed that ESI had already withheld $4,149,477.97 in reimbursements and that despite prior demands for recoupment, including an admission by ESI that the original amount to be collected was to be $8,760,754.75 (this amount is unclear from the prior correspondence outlined at Exs. 9-21), the principal balance due to ESI and DHA (TRICARE) was $0.  Ex. 22.

115.    The October 23, 2019 notice further permitted Smart and SP2 the promised appellate rights.  Ex. 22.

116.    In compliance with the appellate rights, Smart and SP2 appealed.

117.    Despite multiple requests, ESI and DHA have refused to process Smart and SP2's appeals.

**Federal Claims Collection Act**

118. The Federal Claims Collection Act provides authority to Federal agencies for collecting or compromising claims, or suspending or terminating collection action, as appropriate. This authority can be exercised only through agency regulations that conform to the regulations on claims collection (4 CFR Parts 101-105) issued jointly by the Comptroller General and the Attorney General.[9]

119. The Federal Claims Collection Act mandates that actions to recover overpayments arise only when the government has a right to recover money or property from an individual, partnership, association, corporation, governmental body or other legal entity, foreign or domestic.

120. DHA and ESI have failed to establish the legal basis for recovery of money and therefore Smart is due monies.

**Overpayment Collections Cannot Exceed Thirty (30) Months**

121.    Fla. Stat. §627.6131 provides requirements to handle payment and overpayment of health insurance claims in the State of Florida.

122.    DHA's direction to collect alleged overpayments and ESI's collection of alleged overpayments is in violation of Fla. Stat. §627.6131.

---

[9] 32 CFR 199.11 - Overpayments recovery. The Federal Claims Collection Act, 31 U.S.C. §3701, et seq., as amended by the Debt Collection Act of 1982 and the Debt Collection Improvement Act of 1996 (DCIA), provides the basic authority under which claims may be asserted pursuant to this section.

## COUNT I

**BREACH OF CONTRACT AGAINST ESI – 2020 APPEAL**

COME NOW Plaintiffs and for Count I of their Complaint state to this Honorable Court as follows:

123. The allegations set forth in the preceding paragraphs 1-122 are reincorporated as though fully set forth herein.

124. This is an action by Plaintiffs against ESI for breach of the terms of the October 23, 2019 letter wherein Plaintiffs were guaranteed an appellate process.

125. The terms of the October 23, 2019 letter stating "If you believe this determination regarding your TRICARE debt is incorrect or dispute the amount of the debt calculated herein, you have a right to request an administrative review of the indebtedness.  Your request must be in writing and must be received by this office within 90 days from the date of this letter."  Ex. 22

126. Pursuant to the terms of the October 23, 2019 letter, appeal documentation and calculation error notifications were submitted on November 14, 2019, November 15,2019, January 21, 2020, and January 31, 2020.  Exs. 22, 26, 28 and 29.

127. ESI has refused to acknowledge the appeal documentation.

128. ESI has refused to respond to the appeal documentation or make a final determination.

129. ESI has refused to tender payment on DHA TRICARE beneficiary claims due and owing Smart and SP2.

130.    ESI has refused to properly calculate claims and recoupments on DHA TRICARE beneficiary claims due and owing Smart and SP2.

131.    Plaintiffs were not afforded all rights and protections under the October 23, 2019 correspondence.

132.    Smart and SP2 have been damaged as a proximate result of ESI's breaches of the appellate rights outlined in the October 23, 2019 correspondence.

## COUNT II

### BREACH OF CONTRACT AGAINST ESI – MAY AUDIT

COME NOW Plaintiffs and for Count II of their Complaint state to this Honorable Court as follows:

133.    The allegations set forth in the preceding paragraphs 1-122 are reincorporated as though fully set forth herein.

134.    This is an action by Plaintiffs against ESI for breach of the terms of the Written Agreements (Ex. 1) and Provider Manual (Ex. 2).

135.    ESI is required to serve all notices, including audit findings and recoupment notices in compliance with the mandates of the Written Agreement and Provider Manual.

136.    ESI breached the Written Agreement and Provider Manual by failing to serve the audit findings from review of sixty (60) Smart prescriptions from between March 19, 2019 and May 1, 2019.

137.    ESI breached the Written Agreement and Provider Manual by failing to serve the audit findings of SP2 from review of thirteen (13) prescriptions between March 8, 2019 and April 24, 2019.

138.    Yet, despite never serving any audit findings on Smart or SP2, ESI shared the audit findings with DHA on July 30, 2019.

139.    These audit findings were then used to support adverse action by DHA.

140.    Plaintiffs were not afforded all rights and protections under the Written Agreement and Provider Manual as required.

141.    Both Smart and SP2 have been damaged as a proximate result of ESI's breaches of the Written Agreement and Provider Manual.

**COUNT III**

**NEGLIGENCE BY ESI**

COME NOW Plaintiffs and for Count III of their Complaint state to this Honorable Court as follows:

142.    The allegations set forth in the preceding paragraphs 1-122 are reincorporated as though fully set forth herein.

143.    As part of ESI's oversight and management authority over TRICARE pursuant to agreement with DHA, ESI had a duty to Smart and SP2 to pay for the provision of pharmaceutical goods and services that were provided to DHA TRICARE beneficiaries by Smart and SP2 with funds ESI obtained from DHA.

144.    ESI also has a duty to Smart and SP2 to make accurate coverage determinations and claims audits.

145.    ESI has breached its duty to pay Smart and SP2 for pharmaceutical goods and services each provided to DHA TRICARE beneficiaries.

146.    ESI also breached its duty to Smart and SP2 to make accurate coverage determinations.

147.    ESI further breached its duty to Smart and SP2 by failing to audit claims accurately.

148.    ESI further breached its duty to Smart and SP2 by failing to notice Smart and SP2 of claim audit outcomes and by failing to honor and abide by Smart and SP2's appellate rights.

149.    As a direct and proximate cause of ESI's multiple breaches, ESI has been denied payments for pharmaceutical goods and services provided, damaged by inaccurate coverage determinations, and been denied due process relative to audits through service failures and ESI's refusal to honor or participate in appeals.

150.    Smart and SP2 have suffered substantial damages as a direct and proximate result of ESI's negligence.

## COUNT IV

## NEGLILGENT MISREPRESENTATION BY ESI

COME NOW Plaintiffs and for Count IV of their Complaint state to this Honorable Court as follows:

151.    The allegations set forth in the preceding paragraphs 1-122 are reincorporated as though fully set forth herein.

27

152.    This is an action by Smart and SP2 against ESI for negligent misrepresentation.

153.    As alleged herein, ESI and Smart and SP2 exchanged information during the course of their business.

154.    In particular, ESI was permitted to audit claims submitted by Smart and SP2 and Smart and SP2 were permitted to appeal any findings concluded by ESI.

155.    ESI failed to exercise reasonable care or competence in obtaining or communicating information regarding Smart and SP2's appellate rights and guarantees.

156.    ESI intentionally provided the information to influence and guide Smart and SP2 in a particular business transaction.

157.    Smart and SP2 justifiably relied upon ESI's representations that any audit findings would be disclosed and subject to audit which could include the submission of additional documentation and information to refute ESI's findings.

158.    As a result of Smart and SP2's reliance on the statement, Smart and SP2 suffered significant pecuniary losses.

## **COUNT V**

## **BREACH OF DUTY OF GOOD FAITH AND FAIR DEALING BY ESI**

COME NOW Plaintiffs and for Count V of their Complaint state to this Honorable Court as follows:

159.    The allegations set forth in the preceding paragraphs 1-122 are reincorporated as though fully set forth herein.

160.    This is an action by Smart and SP2 against ESI for breach of the implied covenant of good faith and fair dealing.

161.    All of the dealings between Smart and SP2 and ESI set forth above are material to this action and, by implied covenant, required the exercise of good faith and fair dealing on the part of both parties.

162.    The duty of good faith and fair dealing requires that each party act honestly, in observance of commercial standards of fair dealing, and cooperate with each other in a manner so as not to prevent the other party from enjoying the benefit of the bargain.

163.    As alleged herein, ESI breached payment obligations, appellate review rights, recoupment calculations and collection, and violated federal and state laws and regulations.

164.    Smart and SP2 have suffered substantial damages as a direct and proximate result of ESI's breach of the covenant of good faith and fair dealing.

## COUNT VI

### UNJUST ENRICHMENT AGAINST ESI AND DHA

COME NOW Plaintiffs and for Count VI of their Complaint state to this Honorable Court as follows:

165.    The allegations set forth in the preceding paragraphs 1-122 are reincorporated as though fully set forth herein.

166.    This is an action by Smart and SP2 against ESI for unjust enrichment.

167.   Smart and SP2 conferred a benefit upon ESI and DHA by providing pharmaceutical products and services to DHA TRICARE beneficiaries.

168.   ESI and DHA voluntarily accepted and retained the benefits conferred on ESI by Smart and SP2.

169.   The circumstances are such that it would be inequitable for ESI and/or DHA to retain the benefits conferred on it by Smart and SP2 without paying Smart and SP2 the value thereof.

170.   Smart and SP2 have sustained significant damages as a proximate result of ESI and DHA's wrongful actions.

<u>**COUNT VII**</u>

**CONVERSION BY ESI AND DHA**

COME NOW Plaintiffs and for Count VII of their Complaint state to this Honorable Court as follows:

171.   The allegations set forth in the preceding paragraphs 1-122 are reincorporated as though fully set forth herein.

172.   As asserted herein, ESI has refused to pay Smart and SP2 monies for pharmaceutical products and services rendered to DHA TRICARE beneficiaries.

173.   As asserted herein, DHA has refused to authorize its agent and separately refused to pay Smart and SP2 monies for pharmaceutical products and services rendered to DHA TRICARE beneficiaries.

174.    The amount due and owing from ESI and DHA for pharmaceutical products and services provided to TRICARE beneficiaries by Smart is $3,039,172.  Exs. 29-30.

175.    The amount due and owing from ESI and DHA for pharmaceutical products and services provided to TRICARE beneficiaries to SP2 is $4,251,834.

176.    Thus, ESI and/or DHA owes Smart and SP2 a total of $7,291,006 for pharmaceutical services and products provided to DHA TRICARE beneficiaries.

177.    The $7,291,006 is rightfully the property of Smart and SP2.

178.    ESI and/or DHA have and continue to assert dominion and control over Smart's and SP2's $7,291,006.

179.    Smart and SP2 have made numerous demands for the funds (i.e. their property).

180.    Despite demand, ESI and DHA have refused or ignored these requests.

181.    Smart and SP2 have sustained significant damages as a result of ESI and DHA's wrongful actions.

<u>COUNT VIII</u>

**DECLARATORY JUDGMENT AGAINST ESI AND DHA
FOR VIOLATION OF FLORIDA STATUTES**

COME NOW Plaintiffs and for Count VII of their Complaint state to this Honorable Court as follows:

182.    The allegations set forth in the preceding paragraphs 1-122 are reincorporated as though fully set forth herein.

183.    This is an action for declaratory judgment under the Federal Declaratory Judgment Act, 28 U.S.C. §§2201 and 2202.

184.    An actual case and controversy exists between Smart and ESI that may be adjudicated by this Court consistent with U.S. CONST. Art. III.

185.    An actual case and controversy exists between SP2 and ESI that may be adjudicated by this Court consistent with U.S. CONST. Art. III.

186.    An actual case and controversy exists between Smart and DHA that may be adjudicated by this Court consistent with U.S. CONST. Art. III.

187.    An actual case and controversy exists between SP2 and DHA that may be adjudicated by this Court consistent with U.S. CONST. Art. III.

188.    ESI is the PBM for TRICARE and acts as the authorized and contracted agent of DHA in determining formularies, issuing payments, conducting audits, imposing recoupments, and other tasks necessary to implement and oversee the TRICARE pharmacy program on behalf of DHA.

189.    ESI has a clear, indisputable, nondiscretionary duty to follow and comply with all federal rules and regulations as well as state laws and regulations.

190.    ESI is required to abide by contractual provisions when collecting outstanding alleged deficiencies from providers.

191.    DHA has a clear, indisputable, nondiscretionary duty to follow and comply with all federal rules and regulations as well as state laws and regulations.

192.    DHA is required to abide by contractual provisions when collecting or directed its agents to collect outstanding alleged deficiencies from providers.

193.    At all pertinent times, Smart and SP2 were providers with ESI and were authorized to provide pharmaceutical services and products to DHA TRICARE beneficiaries.

194.    As previously noted, on or about on October 23, 2019, ESI on behalf of DHA issued notice to Smart and SP2 indicated that ESI and DHA had already withheld $4,149,477.97 in reimbursements and that despite prior demands for recoupment, including an admission by ESI, on behalf of DHA, that the original amount to be collected was to be $8,760,754.75 (this amount is unclear from the prior correspondence outlined at Exs. 9-21 and appears to be higher), the principal balance due to ESI and DHA (TRICARE) was $0.  Ex. 22.

195.    The calculations by DHA and ESI regarding the recoupment amount that resulted in a withholding of $4,149,477.97 is inaccurate and flawed.

196.    In fact, based upon the same claims considered by DHA and ESI upon which $4,149,477.97 was recaptured, Smart and SP2 are owed $7,291,006.

197.    As noted to DHA and ESI on multiple occasions, DHA was required to order its agent, ESI, to tender payment to Smart and SP2, and ESI was required to tender payment. DHA breached its duties in identifying and authorizing it's agent, ESI to collect inaccurate and unobtainable funds from Smart and SP2 on alleged deficient claims that are outside the applicable time period of collection; to wit, thirty (30) months pursuant to Fla. Stat. §627.6131(6).

198.    ESI breached its duties in collecting inaccurate and unobtainable funds from Smart and SP2 on alleged deficient claims that are outside the applicable time period of collection; to wit, thirty (30) months pursuant to Fla. Stat. §627.6131(6).

199.    DHA and ESI also breached their duties in violating Smart and SP2's due process.

200.    DHA and ESI violated procedures in calculating the recoupment amount of erroneous payments.

201.    DHA and ESI violated Fla. Stat. §627.6131(6) in attempting to collect funds from Smart and SP2 that were outside the applicable time frame permitted by law.

202.    DHA and ESI violated recoupment procedures mandated by 32 CFR §199.11(f)(6).

203.    DHA and ESI violated Fla Stat. 627.6131(6) by recouping monies for claims older than thirty (30) months.

204.    Smart and SP2 have been and continue to be damaged by Defendants unlawful collection attempts.

205.    This    Court    is    asked    to    make    a    finding    that DHA and ESI may not recoup the funds as identified in Exhibits 9-21 and 24 as the purported recoupment is in violation of federal and state law, contract law, contractual requirements, and due process.

<u>COUNT IX</u>

**BREACH OF CONTRACT AGAINST DHA**

COME NOW Plaintiffs and for Count IX of their Complaint state to this Honorable Court as follows:

206.    The allegations set forth in the preceding paragraphs 1-122 are reincorporated as though fully set forth herein.

207.    This is an action by Smart and SP2 against DHA for breach of the Settlement Agreement in *Smart Pharmacy, Inc. et al. v. Bono, et al.,* Case No. 3:18-cv-525-BJD-JBT in the Middle District of Florida.  Ex. 34.

208.    Pursuant to the terms of the Settlement Agreement, DHA was to order ESI to clarify the multiple and convoluted recoupment notices through reissuance of a final reconciliation regarding monies allegedly due and owing to Smart and SP2 for all past and current audit findings by ESI on behalf of DHA.

209.    As part of the Settlement Agreement, DHA agreed to order ESI to provide Smart and SP2 with proper service of the findings and expressly permit Smart and SP2 all appeal rights.

210.    In compliance with the Settlement Agreement, DHA ordered ESI on October 23, 2019, to notice Smart and SP2 with final findings regarding the monies due and owing from ESI on behalf of DHA.

211.    The ESI notice on behalf of DHA claimed that ESI had already withheld $4,149,477.97 in reimbursements and that despite prior demands for recoupment, including an admission by ESI that the original amount to be collected was to be

$8,760,754.75 (this amount is unclear from the prior correspondence outlined at Exs. 9-21), the principal balance due to ESI and DHA (TRICARE) was $0.  Ex. 22.

212.    The October 23, 2019 notice further permitted Smart and SP2 the promised appellate rights.  Ex. 22.

213.    In compliance with the appellate rights, Smart and SP2 appealed.

214.    Despite multiple requests, ESI and DHA have refused to process Smart and SP2's appeals.

215.    DHA has breached the terms of the Settlement Agreement by failing to process Smart and SP2's appeals.

216.    DHA has breached the terms of the Settlement Agreement by failing to provide the promised appellate rights to Smart and SP2 either directly or by directing DHA's PBM, ESI, to process Smart and SP2's appeal.

217.    Smart and SP2 were not afforded all rights and protections as required by the October 23, 2019 final correspondence indicating a $0 balance as issued by DHA's PBM, ESI, as part of the Settlement Agreement between Smart and SP2 and DHA in *Smart Pharmacy, Inc. et al. v. Bono, et al.,* Case No. 3:18-cv-525-BJD-JBT in the Middle District of Florida.

218.    Smart and SP2 have been damaged as a proximate result of DHA's breaches of the Settlement Agreement.

## COUNT X

### DECLARATORY JUDGMENT AGAINST DHA
### FAILURE TO DIRECT ESI TO PAY

COME NOW Plaintiffs and for Count X of their Complaint state to this Honorable Court as follows:

219.    The allegations set forth in the preceding paragraphs 1-122 are reincorporated as though fully set forth herein.

220.    This is an action for declaratory judgment under the Federal Declaratory Judgment Act, 28 U.S.C. §§2201 and 2202.

221.    An actual case and controversy exists between Smart and Place and/or DHA that may be adjudicated by this Court consistent with U.S. CONST. Art. III.

222.    An actual case and controversy exists between SP2 and Place and/or DHA that may be adjudicated by this Court consistent with U.S. CONST. Art. III.

223.    Place has oversight and management authority to direct DHA's operations of the TRICARE program.

224.    Place, in his official capacity, has a clear, indisputable, nondiscretionary duty to follow and comply with all federal rules and regulations as well as state rules and regulations and also secure compliance of the DHA.

225.    DHA is required to abide by contractual provisions when collecting or ordering agents, including, but not limited to ESI, acting on their respective behalf to collect outstanding alleged deficiencies from providers.

37

226.    At all pertinent times, Smart and SP2 were providers with ESI authorized to provide pharmaceutical services and products to DHA TRICARE beneficiaries.

227.    As previously noted, on or about October 23, 2019, ESI on behalf of DHA and in compliance with the Settlement Agreement reached with Smart and SP2 in *Smart Pharmacy, Inc. et al. v. Bono, et al.,* Case No. 3:18-cv-525-BJD-JBT in the Middle District of Florida, issued notice to Smart and SP2 indicated that it had already withheld $4,149,477.97 in reimbursements and that despite prior demands for recoupment, including an admission by ESI that the original amount to be collected was to be $8,760,754.75 (this amount is unclear from the prior correspondence outlined at Exs. 9-21 and appears to be higher), the principal balance due to ESI and DHA (TRICARE) was $0.  Ex. 22.

228.    The calculations regarding the recoupment amount that resulted in a withholding of $4,149,477.97 is inaccurate and flawed.

229.    In fact, based upon the same claims considered by DHA and ESI upon which $4,149,477.97 was recaptured, Smart and SP2 are owed $7,291,006.

230.    As noted to DHA, and DHA's agent ESI, on multiple occasions, DHA was required to order its agent, ESI, to tender payment to Smart and SP2 and ESI was required to tender payment.

231.    As noted to DHA, and DHA's agent ESI, on multiple occasions, DHA was required to provide Smart and SP2 with access to the appellate process and the accompanying rights.

232.     DHA breached its duties in identifying and authorizing its agent, ESI, to collect funds from Smart and SP2, on alleged deficient claims that are outside the applicable time period of collection; to wit, thirty (30) months pursuant to Fla. Stat. §627.6131(6).

233.     DHA also breached its duties in violating Smart and SP2's due process.

234.     DHA also violated its own agent's procedures for determining the recoupment of erroneous payments as ESI did not make any erroneous payment and no recoupment was permitted.

235.     DHA violated Fla. Stat. §627.6131(6) in attempting to collect funds or ordering its agent, ESI, to collect inaccurate and unobtainable funds from Smart and SP2 that were outside the applicable time frame permitted by law.

236.     DHA violated recoupment procedures mandated by 32 CFR §199.11(f)(6).

237.     DHA violated Fla Stat. 627.6131(6) by recouping, directly or through its agent, monies for claims older than thirty (30) months.

238.     Smart and SP2 have been and continue to be damaged by Defendants unlawful collection attempts.

239.     This Court is asked to make a finding that DHA may not recoup the funds as identified in Exhibits 9-21 and 24 as recoupment is in violation of federal and state law, contract law, contractual requirements, and due process.

## COUNT XI

### DECLARATORY JUDGMENT AGAINST DHA AND ESI FOR FAILURE TO COMPLY WITH TRICARE REIMBURSEMENT MANUAL 6010.61-M, 32 C.F.R. 199.2, AND 32 C.F.R. 199.7

COME NOW Plaintiffs and for Count XI of their Complaint state to this Honorable Court as follows:

240.   The allegations set forth in the preceding paragraphs 1-122 are reincorporated as though fully set forth herein.

241.   This is an action for declaratory judgment under the Federal Declaratory Judgment Act, 28 U.S.C. §§2201 and 2202.

242.   An actual case and controversy exists between Smart and ESI that may be adjudicated by this Court consistent with U.S. CONST. Art. III.

243.   An actual case and controversy exists between SP2 and ESI that may be adjudicated by this Court consistent with U.S. CONST. Art. III.

244.   An actual case and controversy exists between Smart and DHA that may be adjudicated by this Court consistent with U.S. CONST. Art. III.

245.   An actual case and controversy exists between SP2 and DHA that may be adjudicated by this Court consistent with U.S. CONST. Art. III.

246.   TRICARE Reimbursement Manual 6010.61-M, 32 C.F.R. §199.2, and 32 C.F.R. §199.17 provide rules, regulations, and requirements that govern administration of the TRICARE program for DHA and ESI that provide mandates on how payments, audits, overpayments, liabilities, recoupments, appeals, and other activities regarding the administration of TRICARE beneficiary claims must be handled by DHA and ESI.

247.    DHA has a clear, indisputable, nondiscretionary duty to follow and comply with all federal rules and regulations.

248.    ESI has a clear, indisputable, nondiscretionary duty to follow and comply with all federal rules and regulations.

249.    At all pertinent times, Smart and SP2 were providers with ESI and were authorized to provide pharmaceutical services and products to DHA TRICARE beneficiaries.

250.    Neither DHA nor ESI followed or complied with federal rules and regulations regarding payments, audits, overpayments, liabilities, recoupments, appeals, and other activities regarding the administration of TRICARE beneficiary claims.

251.    Smart and SP2 have been and continue to be damaged by Defendants unlawful behavior.

252.    This Court is asked to make a finding that DHA and ESI violated the rules, regulations, and requirements that govern administration of the TRICARE program for DHA and ESI that provide mandates on how payments, audits, overpayments, liabilities, recoupments, appeals, and other activities regarding the administration of TRICARE.

## <u>COUNT XII</u>

### BREACH OF CONTRACT MEDCO/ESI SETTLEMENT AGREEMENT

COME NOW Plaintiffs and for Count XII of their Complaint state to this Honorable Court as follows:

253.    The allegations set forth in the preceding paragraphs 1-122 are reincorporated as though fully set forth herein.

254.    This is an action by Smart and SP2 against DHA for breach of the Settlement Agreement in *Smart Pharmacy, Inc., et al. v. Medco Health Solutions, Inc.*, Case No. 2:11-CV-6485 (D.C. NJ).  Ex. 35.

255.    The Settlement Agreement states "…This Release discharges the Disputed Claims and any and all claims, including those of which Medco/ESI are not aware, and those not mentioned in this Release. This Release includes, but is not limed to, every claim, right and cause of action which Medco/ESI have or may have had against Plaintiffs including, but not limited to, those of which the Medco/ESI may not be aware and those not expressly mentioned in this Agreement, from the beginning of time to the date of this Agreement including, but not limited to any and all claims arising out of the subject Litigation as defined above." Ex. 35.

256.    The February 2015 Settlement Agreement with Medco/ESI expressly released any and all claims for overpayment that occurred prior to February 23, 2015.

257.    ESI breached the terms of the Settlement Agreement by failing to process Smart and SP2's claims prior to February 23, 2015.  Ex. 22.

258.    ESI further breached the terms of the Settlement Agreement by assessing recoupments against Smart and SP2 for claims that were submitted prior to February 23, 2015. Ex. 22.

259.     Smart and SP2 have been damaged as a proximate result of ESI's breaches of the Settlement Agreement in an amount to be proven at trial to include improper recoupments for all claims from the beginning of time to February 23, 2015.

## COUNT XIII

### DECLARATORY JUDGEMENT THAT ESI RELEASE ANY AND ALL CLAIMS FROM THE BEGINNING OF TIME TO FEBRUARY 23, 2015

COME NOW Plaintiffs and for Count XIII of their Complaint state to this Honorable Court as follows:

260.     The allegations set forth in the preceding paragraphs 1-122 are reincorporated as though fully set forth herein.

261.     This is an action for declaratory judgment under the Federal Declaratory Judgment Act, 28 U.S.C. §§2201 and 2202.

262.     An actual case and controversy exists between Smart and ESI that may be adjudicated by this Court consistent with U.S. CONST. Art. III.

263.     An actual case and controversy exists between SP2 and ESI that may be adjudicated by this Court consistent with U.S. CONST. Art. III.

264.     On February 23, 2015 Smart and ESI's predecessor executed the Medco/ESI Settlement Agreement in *Smart Pharmacy, Inc., et al. v. Medco Health Solutions, Inc.*, Case No. 2:11-CV-6485 (D.C. NJ).  Ex. 35.

265.     The Medco/ESI Settlement Agreement states "…This Release discharges the Disputed Claims and any and all claims, including those of which Medco/ESI are not aware, and those not mentioned in this Release. This Release includes, but is not limed

to, every claim, right and cause of action which Medco/ESI have or may have had against Plaintiffs including, but not limited to, those of which the Medco/ESI may not be aware and those not expressly mentioned in this Agreement, from the beginning of time to the date of this Agreement including, but not limited to any and all claims arising out of the subject Litigation as defined above." Ex. 35.

266. The February 2015 Medco/ESI Settlement Agreement expressly released any and all claims for overpayment that occurred prior to February 23, 2015.

267. As previously noted, on or about on October 23, 2019, ESI issued notice to Smart and SP2 indicated that ESI and DHA had already withheld $4,149,477.97 in reimbursements and that despite prior demands for recoupment. Ex. 22.

268. In addition to the calculations by DHA and ESI regarding the recoupment amount that resulted in a withholding of $4,149,477.97 being inaccurate and flawed, the recoupment is in direct violation of the terms of the Medco/ESI Settlement Agreement.

269. Specifically, the Medco ESI Settlement Agreement resolved any and all claims prior to February 23, 2015.

270. Yet, review of the claims cited by ESI on October 23, 2019 show a large volume of claims before February 23, 2015 where recoupment was taken.

271. No claims prior to February 23, 2015 were permitted for recoupment of offset.

272. This recoupment is in violation of the Medco/ESI Settlement Agreement.

273. This Court is asked to make a finding that ESI is prohibited from collecting recoupment or offset for any claims submitted prior to February 23, 2015.

## COUNT XIV

**DECLARATORY JUDGMENT THAT ESI AND DHA RELEASE ANY AND ALL
CLAIMS FROM THE BEGINNING OF TIME TO DECEMBER 30, 2015**

COME NOW Plaintiffs and for Count XIV of their Complaint state to this
Honorable Court as follows:

274.    The allegations set forth in the preceding paragraphs 1-122 are
reincorporated as though fully set forth herein.

275.    This is an action for declaratory judgment under the Federal Declaratory
Judgment Act, 28 U.S.C. §§2201 and 2202.

276.    An actual case and controversy exists between Smart and ESI that may be
adjudicated by this Court consistent with U.S. CONST. Art. III.

277.    An actual case and controversy exists between SP2 and ESI that may be
adjudicated by this Court consistent with U.S. CONST. Art. III.

278.    An actual case and controversy exists between Smart and DHA that may
be adjudicated by this Court consistent with U.S. CONST. Art. III.

279.    An actual case and controversy exists between SP2 and DHA that may be
adjudicated by this Court consistent with U.S. CONST. Art. III.

280.    On or about December 30, 2015, DHA issued notice to Smart and SP2
that both were temporarily suspended from processing claims and receiving payments
from DHA "for claims and billing information for prescription drugs billed to
government health care programs."  Ex. 3.

281.    Despite initiating a temporary claims processing suspension, DHA mandated that the participation agreement with the patients remained in "full force and effect" and that the pharmacy was expressly prohibited from repudiation of any agreement "as a result of delay in final disposition of claims." Ex. 3.

282.    This First Suspension was the first notification that Smart and SP2 had of any claims suspensions.

283.    As previously noted, on or about on October 23, 2019, ESI issued notice to Smart and SP2 indicated that ESI and DHA had already withheld $4,149,477.97 in reimbursements and that despite prior demands for recoupment.  Ex. 22.

284.    In addition to the calculations by DHA and ESI regarding the recoupment amount that resulted in a withholding of $4,149,477.97 being inaccurate and flawed, the recoupment is in direct violation of the terms of the Medco/ESI Settlement Agreement.

285.    Specifically, the First Suspension was no earlier than December 30, 2015.

286.    Yet, review of the claims cited by ESI on October 23, 2019 show a large volume of claims before December 30, 2015 where recoupment was taken.

287.    No claims prior to December 30, 2015 were permitted for recoupment of offset.

288.    This recoupment is in violation of applicable rules, laws and regulations.

289.    This Court is asked to make a finding that ESI is prohibited from collecting recoupment or offset for any claims submitted prior to December 30, 2015.

## COUNT XV

## DECLARATORY JUDGMENT THAT ESI AND DHA RELEASE ANY AND ALL CLAIMS FROM THE BEGINNING OF TIME TO JULY 12, 2017

COME NOW Plaintiffs and for Count XV of their Complaint state to this Honorable Court as follows:

290. The allegations set forth in the preceding paragraphs 1-122 are reincorporated as though fully set forth herein.

291. This is an action for declaratory judgment under the Federal Declaratory Judgment Act, 28 U.S.C. §§2201 and 2202.

292. An actual case and controversy exists between Smart and ESI that may be adjudicated by this Court consistent with U.S. CONST. Art. III.

293. An actual case and controversy exists between SP2 and ESI that may be adjudicated by this Court consistent with U.S. CONST. Art. III.

294. An actual case and controversy exists between Smart and DHA that may be adjudicated by this Court consistent with U.S. CONST. Art. III.

295. An actual case and controversy exists between SP2 and DHA that may be adjudicated by this Court consistent with U.S. CONST. Art. III.

296. The First Suspension of December 30, 2015 against Smart and SP2 was lifted on June 30, 2017.  Ex. 5.

297. On or about July 13, 2017, DHA issued notice to Smart and SP2 that both were temporarily suspended from processing claims and receiving payments from DHA

"for claims and billing information for prescription drugs billed to government health care programs." Ex. 6.

298.    Despite initiating a temporary claims processing suspension, DHA mandated that the participation agreement with the patients remained in "full force and effect" and that the pharmacy was expressly prohibited from repudiation of any agreement "as a result of delay in final disposition of claims." Ex. 6.

299.    As previously noted, on or about on October 23, 2019, ESI issued notice to Smart and SP2 indicated that ESI and DHA had already withheld $4,149,477.97 in reimbursements and that despite prior demands for recoupment. Ex. 22.

300.    In addition to the calculations by DHA and ESI regarding the recoupment amount that resulted in a withholding of $4,149,477.97 being inaccurate and flawed, the recoupment is in direct violation of the terms of the Medco/ESI Settlement Agreement.

301.    Specifically, the First Suspension was no earlier than December 30, 2015.

302.    Yet, review of the claims cited by ESI on October 23, 2019 show a large volume of claims before July 13, 2017 where recoupment was taken.

303.    No claims prior to July 13, 2017 were permitted for recoupment of offset as all claims were released for adjudication on July 30, 2017 and notice was not reissued until July 13, 2017. Exs. 5-6.

304.    This recoupment is in violation of applicable rules, laws and regulations.

305.    This Court is asked to make a finding that ESI is prohibited from collecting recoupment or offset for any claims submitted prior to July 13, 2017.

## COUNT XVI

### DECLARATORY JUDGMENT THAT ESI AND DHA RELEASE ANY AND ALL CLAIMS FROM THE BEGINNING OF TIME TO OCTOBER 30, 2019

COME NOW Plaintiffs and for Count XVI of their Complaint state to this Honorable Court as follows:

306.    The allegations set forth in the preceding paragraphs 1-122 are reincorporated as though fully set forth herein.

307.    This is an action for declaratory judgment under the Federal Declaratory Judgment Act, 28 U.S.C. §§2201 and 2202.

308.    An actual case and controversy exists between Smart and ESI that may be adjudicated by this Court consistent with U.S. CONST. Art. III.

309.    An actual case and controversy exists between SP2 and ESI that may be adjudicated by this Court consistent with U.S. CONST. Art. III.

310.    An actual case and controversy exists between Smart and DHA that may be adjudicated by this Court consistent with U.S. CONST. Art. III.

311.    An actual case and controversy exists between SP2 and DHA that may be adjudicated by this Court consistent with U.S. CONST. Art. III.

312.    On or about October 31, 2019, DHA issued notice to Smart and SP2 that both were temporarily suspended from processing claims and receiving payments from DHA "for claims and billing information for prescription drugs billed to government health care programs." Ex. 24.

313.    Despite initiating a temporary claims processing suspension, DHA mandated that the participation agreement with the patients remained in "full force and effect" and that the pharmacy was expressly prohibited from repudiation of any agreement "as a result of delay in final disposition of claims."  Ex. 24.

314.    As previously noted, on or about on October 23, 2019, ESI issued notice to Smart and SP2 indicated that ESI and DHA had already withheld $4,149,477.97 in reimbursements and that despite prior demands for recoupment.  Ex. 22.

315.    In addition to the calculations by DHA and ESI regarding the recoupment amount that resulted in a withholding of $4,149,477.97 being inaccurate and flawed, the recoupment is in direct violation of the terms of the Medco/ESI Settlement Agreement.

316.    Specifically, the Third Suspension was no earlier than October 31, 2019.

317.    Yet, review of the claims cited by ESI on October 23, 2019 show a large volume of claims before October 31, 2019 where recoupment was taken.

318.    No claims prior to October 31, 2019 were permitted for recoupment of offset.

319.    This recoupment is in violation of applicable rules, laws and regulations.

320.    This Court is asked to make a finding that ESI is prohibited from collecting recoupment or offset for any claims submitted prior to October 31, 2019.

## **JURY DEMAND**

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiffs hereby requests a trial by jury on all issues so triable.

## **PRAYER FOR RELIEF**

WHEREFORE, in light of the foregoing, Plaintiffs Smart and SP2 request this Court to grant the following relief on each of the Counts set forth in this Complaint:

A.      Enter judgment on the breach of contract claim in favor of Smart and SP2 against ESI for breach of contract regarding the August 2020 Appeal and May 2019 Audit in Counts I and II and award damages in an amount to be proven at trial;

B.      Enter judgment on the negligence claim in Count III in favor of Smart and SP2 and against ESI and award damages in an amount to be proven at trial;

C.      Enter judgment on the negligent misrepresentation claim in Count IV in favor of Smart and SP2 and against ESI and award damages in an amount to be proven at trial;

D.      Enter judgment on the breach of duty of good faith and fair dealing claim in Count V in favor of Smart and SP2 and against ESI and award damages in an amount to be proven at trial;

E.      Enter judgment on the unjust enrichment claim in Count VI in favor of Smart and SP2 and against ESI and award damages in the amount of $7,291,006;

F.      Enter judgment on the unjust enrichment claim in Count VI in favor of Smart and SP2 and against ESI and award damages in the amount of $7,291,006;

G.      Enter judgment on the conversion claim in Count VII in favor of Smart and SP2 and against ESI and award damages in the amount of $7,291,006;

H.      Enter judgment on the conversion claim in Count VII in favor of Smart and SP2 and against DHA and award damages in the amount of $7,291,006;

I.      Enter judgment in favor of Smart and SP2 and against ESI on Count VIII finding that ESI is prohibited from recoupment of any and all claims that violate Fla. Stat. §627.6131.

J.      Enter judgment in favor of Smart and SP2 against ESI on Count VIII finding that ESI violated Smart and SP2's due process rights by failing to comply with 32 C.F.R. §199.11.

K.      Enter judgment in favor of Smart and SP2 and against Place, in his official capacity, on Count IX finding that DHA is in breach of the Settlement Agreement that resulted in the issuance of the October 23, 2019 correspondence from DHA's PBM, ESI and order that DHA abide by the terms of the agreement including the honoring of Smart and SP2's appellate rights;

L.      Enter judgment in favor of Smart and SP2 and against Place, in his official capacity, on Count X finding that DHA is prohibited from recoupment of any and all claims that violate Fla. Stat. §627.6131.

M.      Enter judgment in favor of Smart and SP2 and against ESI on Count X finding that DHA is prohibited from recoupment of any and all claims that violate Fla. Stat. §627.6131.

N.      Enter judgment in favor of Smart and SP2 against DHA, on Count X finding that DHA violated Smart and SP2's due process rights by failing to comply with 32 C.F.R. §199.11.

O.      Enter judgment in favor of Smart and SP2 against Place, in his official capacity on Count X finding that DHA's actions violated federal and state law.

P.        Enter judgment in favor of Smart and SP2 against DHA and ESI on Count XI finding that one or both violated the rules, regulations, and requirements that govern administration of the TRICARE program for DHA and ESI that provide mandates on how payments, audits, overpayments, liabilities, recoupments, appeals, and other activities regarding the administration of TRICARE.

Q.        Enter judgment in favor of Smart and SP2 and against ESI on Count XII finding that ESI is in breach of the Medco/ESI Settlement Agreement that prohibits recoupment of claims prior to February 23, 2015 and awarding damages for improper recoupments and offsets in an amount to be determined at trial.

R.        Enter judgment in favor of Smart and SP2 against ESI on Count XIII finding that ESI is prevented from recouping any monies from Smart or SP2 prior to February 23, 2015.

S.        Enter judgment in favor of Smart and SP2 against ESI on Count IV finding that ESI is prevented from recouping any monies from Smart or SP2 prior to December 30, 2015.

T.        Enter judgment in favor of Smart and SP2 against ESI on Count XV finding that ESI is prevented from recouping any monies from Smart or SP2 prior to July 13, 2017.

U.        Enter judgment in favor of Smart and SP2 against ESI on Count XVI finding that ESI is prevented from recouping any monies from Smart or SP2 prior to October 31, 2019.

V.      Issue an Order finding that DHA and ESI are prohibited from recoupment of claims identified in Exhibits 9-21 and 24 against Smart and SP2 as the collection attempts are in violation of federal and state law, contract provisions, and without due process.

W.      Enter a judgment for costs of reasonable attorneys' fees; and

X.      Grant Smart and SP2 such other relief as the Court deems just and proper.

Dated March 12, 2021                    Respectfully submitted,

                                        */s/ Donald H. Sanders III*
                                        Donald H. Sanders, III (66195MO)
                                        Dillon C. Sanders (72108MO)
                                        D.H. SANDERS, LLC
                                        8011 Clayton Rd., Third Floor
                                        St. Louis, MO 63117
                                        (314) 727-7100
                                        (314) 727-4762 Facsimile
                                        sanders@dhslawfirm.com
                                        dillon@dhsanderslaw.com

                                        */s/ Anthony J. Calamunci*
                                        Anthony J. Calamunci (Pro Hac Vice Pending)
                                        0063937(OH)
                                        FISHER BROYLES
                                        6800 W. Central Ave., Suite E
                                        Toledo, OH 43617
                                        (419) 214-1050
                                        (484) 251-7797 Facsimile
                                        anthony.calamunci@fisherbroyles.com

*/s/ Brian E. Dickerson*
Brian E. Dickerson (Pro Hac Vice Pending)
106615(FL)
FISHER BROYLES
2390 Tamiami Trail North, Suite 100
Naples, FL 34103
Telephone: (202) 570-0248
Facsimile: (202) 697-4896
brian.dickerson@fisherbroyles.com


Attorneys for Plaintiffs